UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TINA MARIE HOLLIER                    CIVIL ACTION NO.  6:21-CV-02629

VERSUS                                JUDGE ROBERT R. SUMMERHAYS

COMMISSIONER OF SOCIAL                MAGISTRATE JUDGE DAVID J. AYO
SECURITY


## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, and for the reasons set forth below, it is recommended that the Commissioner's decision should be affirmed.

## Administrative Proceedings

The claimant, Tina Marie Hollier, fully exhausted her administrative remedies before initiating this action.  The claimant filed an application for disability insurance benefits and an application for supplemental security income benefits, alleging disability beginning on May 30, 2018.[1]  Her applications were denied initially and on reconsideration.[2]  She then requested a hearing, which was held on

---

[1] Rec. Doc. 11-1 at 14.

[2] Rec. Doc. 11-1 at 14.

October 2, 2020 before Administrative Law Judge Carol Latham.[3]  The ALJ issued a decision on February 26, 2021, concluding that the claimant was not disabled within the meaning of the Social Security Act from her alleged disability onset date through the date of the decision.[4]  The claimant asked the Appeals Council to review the ALJ's decision, but the Appeals Council found no basis for review.[5]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review.  *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). The claimant now seeks judicial review of the Commissioner's decision.

## Summary of Pertinent Facts

The claimant was born on January 30, 1968.[6]  At the time of the ALJ's decision, she was 53 years old.  She graduated from high school, attended technical college to become a cosmetologist, and has relevant work experience as a hairdresser/beauty shop owner.[7]  She alleged that she has been disabled since May 30, 2018[8] due to generalized anxiety disorder, major depressive disorder (MDD),

---

[3] A transcript of the hearing is found in the record at Rec. Doc. 11-1 at 32. The hearing was held via teleconference due to the Covid-19 pandemic.

[4] Rec. Doc. 11-1 at 25.

[5] Rec. Doc. 11-1 at 5.

[6] Rec. Doc. 11-1 at 23.

[7] Rec. Doc. 11-1 at 38.

[8] Rec. Doc. 11-1 at 14.

hypertension, degenerative disc disease (DDD) - disc protrusion/ bulge, and Type 2 Diabetes Mellitus.[9]

The medical records in the record reveal the following pertinent history[10]:

1. Crowley Behavioral Health

   A. Prior to her alleged onset date of May 30, 2018, claimant was seen on November 11, 2017 at Crowley Behavioral Health by Jill Dubois, LCSW, for a Comprehensive Behavioral Health Assessment.[11] She reported symptoms - including depression, increased sleepiness, and anxiety- that have persisted for as long as she can remember. And she also reported that she was prescribed Zoloft 15 years earlier and Prozac more recently.[12] She was diagnosed with MDD, and it was recommended that she start counseling as well as psychotropic medication and that her medication be monitored by the clinic.[13] She saw Ms. Dubois for therapy designated as routine on December

---

[9] Rec. Doc. 16 at 1.

[10] As explained below, claimant's statement of errors relates to her mental health issues namely that: (a) the ALJ erred in evaluating the opinion of Ms. Dubois (her therapist) and (b) the ALJ proceeded without the guidance of a useful opinion in assessing Plaintiff's mental impairments. Accordingly, the pertinent medical records relate to her mental health only.

[11] Rec. Doc. 11-1 at 370 -380.

[12] Rec. Doc. 11-1 at 21.

[13] Rec. Doc. 11-1 at 21, 369.

11, 2017, January 29, 2018, March 5, 2018, April 27, 2018 and May 21, 2018.[14]   Claimant treated with Robert McManus, MD, at Crowley Behavioral Health on January 26, 2018 as a new patient and on April 27, 2018 for medication management.[15]

B. After her alleged disability onset date of May 30, 2018, claimant reported that her three-day-a-week physical therapy was interfering with her work which in turn caused financial difficulties leading to depression.[16]  She saw Ms. Dubois for therapy designated as routine on June 18, 2018, July 20, 2018, November 19, 2018, August 5, 2019, October 2, 2019, and July 2, 2020.[17]  Claimant treated with Robert McManus, MD, on July 20, 2018, December 28, 2018, July 10, 2019, October 2, 2019, and January 2, 2020[18] for medication management.[19]  His findings were as follows:

---

[14] Rec. Doc. 11-1 at 389, 391, 393, 395, and 397.

[15] Rec. Doc. 11-1 at 381, 405.

[16] Rec. Doc. 11-1 at 401.

[17] Rec. Doc. 11-1 at 399, 401, 403, 1132, 1134, and 1136.

[18] Rec. Doc. 11-1 at 411, 417, 1138, 1144 and 1150.

[19] The Mental Health Status Form completed by Crowley Behavioral Health indicates that Plaintiff was not treated by Dr. McManus or Ms. Dubois from December 2018 to June of 2019 due to cancellations or no shows, but treatment resumed in June of 2019 with Ms. Dubois and in July of 2019 with Dr. McManus.  Rec. Doc. 11-1 at 764.

i.  July 20, 2018, appointment[20] - Dr. McManus noted that claimant reported sleeping a lot day and night, having suicidal ideation with no intent, and that her depression was "not good."[21]

ii.  December 28, 2018, appointment - Dr. McManus reported that claimant's sleep was good, that she was on her prescriptions and denies suicide or hallucinations.[22]

iii.  July 10, 2019, appointment - Dr. McManus diagnosed claimant with recurrent MDD and described her as "still sleeping too much," having suicidal ideation, being down on herself, and a typical depressed client.[23] He concluded she was not doing well on her sleep medication and changed it.[24]

iv.  October 2, 2019, appointment - Dr. McManus noted that claimant woke groggy, lacked concentration, was experiencing mood swings and suicidal ideation with multiple

---

[20] This was her first appointment with Dr. McManus after alleged onset of disability.

[21] Rec. Doc. 11-1 at 411.

[22] Rec. Doc. 11-1 at 417.

[23] Rec. Doc. 11-1 at 1138.

[24] Rec. Doc. 11-1 at 1137.

somatic complaints.[25]    He added Topamax to her prescriptions for mood swings/lack of concentration.[26]

v.    <u>January 2, 2020, appointment</u> - Dr. McManus noted claimant's prescriptions were working and that she was sleeping well, although she still had suicidal ideation and he observed sad mood, blunted affect, poor judgment, and insight.[27]    He also noted that she was having financial difficulties and agreed to schedule her to see Ms. Dubois.[28]

vi.    Except where otherwise noted and in general Dr. McManus's mental status examinations routinely showed claimant to have good eye contact, normal speech, a neutral mood, coherent thought process, intact associations, normal attention and concentration, intact memory, and fair judgment and insight.[29]

---

[25] Rec. Doc. 11-1 at 1144.

[26] Rec. Doc. 11-1 at 1149.

[27] Rec. Doc. 11-1 at 1150, 1151, 1152.

[28] Rec. Doc. 11-1 at 1155.

[29] Rec. Doc. 11-1 at 368 – 425, 1131 - 1154.

2. <u>Sandra Durdin, Ph.D</u>. – On August 28, 2019, a consultative examination was conducted at the request of the Disability Determination Services.[30] Claimant reported that she was working more slowly than usual at her job doing hair and nails and that she was worried about overstraining herself. She also indicated that she had been losing money. Dr. Durdin's diagnostic impression was that claimant had adjustment reaction with an anxious and depressed mood and noted claimant had normal processing speed, sustained attention and concentration, average memory, appropriate judgment, and organized thought content. She found that claimant may have mild impairment if she had to multitask and there was a delay in instruction, but that memory cues or reminders should help her and that her ability to sustain attention for two hours blocks of time was not impaired. Overall, Dr. Durdin found: "[h]er ability to sustain productivity over a forty-hour work week is not impaired by a mental disorder per se. She is more easily fatigued, but this may be more related to physical or organic issues."[31]

---

[30] Rec. Doc. 11-1 at 774.

[31] Rec. Doc. 11-1 at 774 - 778.

3. <u>State Agency Consultants -</u> Suzanne Roberts, M.D. and Sally Vargheese, MD[32]; and Gerald Dzurik, M.D. and Cynthia Lindsey, Psy.D.[33] reviewed the records at the request of the Social Security Administration and found that claimant had adjustment reaction with an anxious and depressed mood, that she had the residual functioning capacity (RFC) to perform light work, and that while she had some mild limitations in global functioning, her mental limitations were non-severe.

4. <u>Treating Source Statement</u> – On July 21, 2020, Jill Dubois, LCSW completed a Treating Source Statement noting that claimant's provider, Dr. McManus, had retired, and they were awaiting a new provider.  Ms. Dubois reported that claimant was being treated for recurrent, severe MDD with a guarded prognosis.  She noted that claimant had symptoms of mood disturbance with full or partial depressive syndrome but denied presence of bipolar syndrome or anxiety.  She affirmed claimant's symptoms of anhedonia, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt/worthlessness, difficulty concentrating/thinking, and emotional lability.[34] Ms. Dubois opined that claimant was mildly limited in her ability

---

[32] Rec. Doc.11-1 at 71 – 87.

[33] Rec. Doc. 11-1 at 95-113.

[34] Rec. Doc. 11-1 at 1123, 1124.

to understand, remember, or apply information, interact with others, and adapt or manage herself and moderately limited in her ability to concentrate, persist, or maintain pace.[35]  Concerning concentration and persistence, Ms. Dubois opined that claimant could maintain attention and concentration for less than one hour before needing redirection or requiring a break, sometimes but not consistently work appropriately with others, and would be off task greater than 25% of a workday or absent more than four days a month due to her mental impairments.[36]

On October 2, 2020, the claimant testified at a hearing regarding her symptoms and stated that she had been admitted to the hospital recently because she was suicidal.  She stated that her anxiety was "taking over" and she had been "sleeping and sleeping" so she spoke to her therapist who told her to go to the hospital.  She said that her medicine was not working and they "didn't have a doctor where [she] was going." [37]  She was given new medicine that was working "a little better now"

---

[35]     Rec. Doc. 11-1 at 1125.

[36]     Rec. Doc. 11-1 at 1127.

[37]     Rec. Doc. 11-1 at 49.

and she "feels fine." She stated that she was not crying as much, although she was "still sleeping too much" and "down."[38]

The claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

---

[38] Rec. Doc. 11-1 at 1156. The Court notes that there is no evidence of this hospital visit in the record and that it is not addressed in the briefing of either party, although it was mentioned at the hearing.

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

## B.    <u>Entitlement to Benefits</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). *See also Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). *See also Smith*

*v. Berryhill*, 139 S.Ct. at 1772.  A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C.    **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled.  The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still

do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

**D.**    <u>**The ALJ's Findings and Conclusions**</u>

The ALJ determined at step one that claimant meets the insured status requirements of the Social Security Act through September 30, 2022.[39]  This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: degenerative disc disease, diabetes mellitus, obesity, major depressive disorder, anxiety disorder, and adjustment reaction with depressed and anxious mood.[40] This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[41] Claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform light work except she is limited to unskilled work activity, defined as simple, routine tasks involving no more than simple, short instructions, and simple, work-related decisions with few workplace changes, and no work at a fixed

---

[39]    Rec. Doc. 11-1 at 17.

[40]    Rec. Doc. 11-1 at 17.

[41]    Re. Doc. 11-1 at 17.

14

production-rate pace, but rather, goal-oriented work.[42]    Claimant challenges this finding.

At step four, the ALJ found that claimant is not capable of performing any past relevant work.[43] Claimant does not challenge this finding.

At step five, the ALJ found that claimant was not disabled from May 30, 2018 through February 26, 2021 (the date of the decision) because there are jobs in the national economy that she can perform.[44] Claimant challenges this finding.

E.    The Allegations of Error

Claimant alleges the ALJ committed the following errors:

1. The RFC determination lacks the support of substantial evidence because the ALJ erred in evaluating the opinion of Ms. Dubois; and

2. The RFC determination lacks the support of substantial evidence because the ALJ proceeded without the guidance of a useful opinion in assessing Plaintiff's mental impairments.

A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462

---

[42]    Rec. Doc 11-1 at 17.

[43]    Rec. Doc. 11-1 at 23.

[44]    Rec. Doc. 11- 1 at 25.

(citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

Claimant's application for benefits was filed after March 17, 2017. Therefore, the ALJ's duty to weigh medical opinions is governed by 20 C.F.R. 404.1520c. Although an ALJ is no longer required to give controlling weight to a treating physician's medical opinions, the regulations state that "[w]hen a medical source provides one or more medical opinions..., we will consider those medical opinions

16

… from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). The factors to be considered are the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factor which the claimant brings to the court's attention. 20 C.F.R. § 404.1520c(c)(1-5). The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).  With regard to supportability, the regulation states that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. § 404.1520c(c)(1). With regard to consistency, the regulation states that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). Thus, the ALJ was required to consider all of the medical opinions, focusing primarily on the supportability and consistency of each opinion.

     F.    <u>Did the ALJ err in evaluating the opinion of Ms. Dubois resulting in a lack of substantial evidence for its RFC determination?</u>

The ALJ found internal and external inconsistencies in the opinions of Ms. Dubois, noting as follows:

> Jill Dubois, LCSW, the claimant's therapist, opined in July 2020 that the claimant could maintain concentration and attention for less than an hour, sometimes but not consistently work appropriately with supervisors, coworkers, and the public, and would be off task more than 25 percent of the workday or absent more than four days per month due to her mental impairments. (Exhibit 8F). This opinion is not persuasive as it is inconsistent with Ms. Dubois' statement that the claimant is only mildly limited in her ability to interact with others and moderately limited in her ability to concentrate, persist, or maintain pace. Furthermore, mental status examinations do not support her opinion as they consistently showed the claimant to be cooperative with appropriate behavior as well as normal attention and concentration. (Exhibits 1F; 9F).[45]

Claimant argues that the ALJ erred in evaluating the opinions of Ms. Dubois and that her opinions were consistent, because:

> mild limitations in interacting with others correlates to "sometimes" working appropriately with others. Moderate limitation in concentrating, persisting, or maintaining pace correlates to limiting work to one hour at a time.
>
> Moreover, the alleged external inconsistency is nothing more than a highlighting of ebbs in the ebb-and-flow cycle indicative of depressive disorders.[46]

---

[45] Rec. Doc. 11-1 at 22.

[46] Rec. Doc. 16 at 5.

Claimant further argues that based on this error, the ALJ's RFC determination lacks support.

The Court finds that the ALJ considered the opinions of Ms. Dubois citing specific inconsistencies and explaining why the opinions were both internally and externally inconsistent, why they were unsupported by the mental status examinations, and thus why her opinions that claimant would be off task more than 25% of the workday and/or absent more than more than four days per month due to mental health was unpersuasive to the ALJ. The Court finds that claimant's argument that the external inconsistencies in Ms. Dubois' opinion were based on periodic exams in the record at bar which do not support that claimant can hold a job for a significant period of time lacks merit. The Court has reviewed the medical records of Ms. Dubois and Dr. McManus and agrees with the ALJ that Ms. Dubois' opinions that claimant would be off task more than 25% of the workday and/or absent more than more than four days per month due to mental health were unsupported by the mental status examinations and finds that the objective medical records do not support Ms. Dubois' findings. Accordingly, the Court finds that the ALJ did not in the evaluation of the opinion of Ms. Dubois.

G. Did the RFC determination lack the support of substantial evidence because the ALJ proceeded without the guidance of a useful opinion in assessing Plaintiff's mental impairments?

19

Claimant argues that the ALJ's RFC determination lacks the support of substantial evidence because he rejected every mental health opinion and was unguided in his RFC determination. Claimant further argues that if the Court finds that the ALJ appropriately rejected Ms. Dubois' opinion, then the Court should remand this matter so that the ALJ can procure meaningful guidance for a mental RFC in accordance with regulations.

The Court disagrees with claimant's argument that the ALJ was unguided in its mental RFC determination. As explained above, the ALJ considered Ms. Dubois' report and explained why it was not persuasive. In addition, the ALJ considered claimant's medical records from Crowley Behavioral Health prior to and after her alleged onset date and considered the objective findings during the relevant period, noting that claimant's "[m]ental status examinations routinely showed her to have good eye contact normal speech, neutral mood, coherent thought process, intact associations, normal attention and concentration, intact memory, and fair judgment and insight."[47]  The ALJ then noted a June 2019 record showing a gap in treatment as claimant had not returned "to Crowley . . . since December 2018 after several cancellations and no-shows" and that when Plaintiff resumed treatment at Crowley, her medication was restarted with only minor changes for the remainder of the

---

[47] Rec. Doc. 11-1 at 21.

relevant period.  The ALJ observed that after being prescribed the medication, claimant "never exhibited any significant mental abnormalities at any of her routine visits."[48]

The ALJ also considered Dr. Durdin's reports and explained why she found Dr. Durdin's opinion that Plaintiff had no impairment in her abilities to sustain attention for two-hours at a time, get along with others in the work setting, sustain productivity over a 40-hour workweek, and withstand routine demands, pressure, and expectations was "not fully persuasive."[49]  The ALJ found that her opinion was

> generally supported by Dr. Durdin's mental status examination findings.  However, the opinion is based on a one-time examination and is not fully consistent with the longitudinal record showing that [Plaintiff] occasionally exhibited dysphoric mood, impaired recent memory, and suicidal ideation.

In addition, the ALJ considered the reports of the state agency medical consultants and found the finding that claimant is "capable of performing the full range of light exertional work but had no severe mental impairments" was partially persuasive because there was medical evidence showing that claimant had received counseling and medication management for severe depressive disorder.[50]

---

[48] Rec. Doc. 11-1 at 21, 22.

[49] Rec. Doc. 11-1 at 22.

[50] Rec. Doc. 11-1 at 21, 22.

The ALJ then stated:

> The foregoing evidence does indicate that the claimant has some abnormalities that are likely to impose some functional limitations. However, the undersigned concludes that these findings are not indicative of any intractable condition that would preclude the claimant from performing light, unskilled work activity for 12 consecutive months. The claimant has a treatment history that fails to demonstrate a condition of the degree of severity alleged.
>
> In summary, the undersigned finds that the medical evidence is not supportive of disability based upon the clinical findings and the totality of the evidence. The claimant's severe impairments and related symptoms limit her to performing the above residual functional capacity, which is supported by some of the claimant's own subjective allegations, the relatively benign objective findings, the conservative degree of treatment the claimant has received, the claimant's response to treatment, the exertional limitations given by the State agency medical consultants, and the record as a whole, which do not support the severity of several of the claimant's allegations nor does it exhibit the types of ongoing medical treatment or objective abnormalities one would expect for a totally disabled individual. The undersigned considered all of the limitations in formulating the residual functional capacity, and the overall record does not support any greater limitations.[51]

The Court finds that the ALJ properly based its RFC determination on the opinions of Dr. Durdin, Ms. Dubois, Dr. Varghese and Dr. Lindsey in light of the objective medical facts, the claimant's subjective evidence of pain and disability,

---

[51] Rec. Doc. 11-1 at

and the claimant's age, education and work experience and used all of this to determine the claimant's RFC.  Accordingly, claimant's argument that the ALJ proceeded without the guidance of a useful opinion in assessing mental impairments lacks merit and the Court finds that the ALJ's finding of residual functional capacity was based on substantial evidence in the record.

## **Conclusion and Recommendation**

For the reasons fully discussed above, this Court recommends that the Commissioner's decision should be AFFIRMED and this matter should be dismissed with prejudice.

* * * * *

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[52]

Signed at Lafayette, Louisiana on this 14th day of March, 2023.

_____
DAVID J. AYO
UNITED STATES MAGISTRATE JUDGE

---

[52]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).